# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| LIVING THE DREAM ALASKA, LLC, | |
| Plaintiff, | 3:18-CV-00235-JWS |
| vs. | ORDER AND OPINION |
| MERCEDES-BENZ USA, LLC, | [Re: Doc. 71] |
| Defendants. | |

## I. MOTION PRESENTED

At docket 71 Defendant Mercedes-Benz USA, LLC ("Defendant" or "MBUSA") filed a motion for summary judgment on the complaint brought by Plaintiff Living the Dream Alaska, LLC ("Plaintiff" or "LTD"). The complaint alleges multiple causes of action based on Defendant's alleged failure to repair defects in Plaintiff's Mercedes-Benz vehicle. Plaintiff filed a response at docket 79, and Defendant filed its reply at docket 82. Oral argument was requested but would not be of assistance to the court.

## II. BACKGROUND

LTD serves as a vendor for various outdoor recreation companies in and around Juneau, Alaska. LTD purchased a new 2016 Mercedes-Benz Sprinter 2500 Crew Van ("Sprinter") on or around October 30, 2016, with plans to use the Sprinter to transport customers and employees and to haul equipment. It came with a 36- month/36,000- mile warranty, which provided the following coverage:

-1-

> The New Vehicle Limited Warranty warrants to the original and each subsequent owner of a new Sprinter vehicle that any authorized Van Dealer will make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period. . . .
>
> The New Vehicle Limited Warranty, the Diesel Engine Limited Warranty, and the Spare Parts Warranty cover the cost of towing your vehicle to the nearest authorized Van Dealer if your vehicle cannot be driven because a covered part has failed.[1]

Plaintiff's employee Stuart Hallam ("Hallam") took possession of the Sprinter on behalf of LTD on or about November 17, 2016, in Colorado. Rather than drive it to Alaska, Hallam drove the vehicle to Idaho, where he was spending the winter working on a cabin and skiing.[2] He would occasionally drive the vehicle through Idaho and Canada while he "scouted out" other outdoor recreation business opportunities.[3]

During one such drive Hallam noticed that the vehicle would make a "clunking" noise when it was put into drive or reverse.[4] He drove it to the nearest Mercedes-Benz dealership, which was in Spokane Washington, on February 7, 2017. The technician noticed an oil leak and replaced a seal to remedy that problem. He also verified the noise reported by Hallam and concluded that it involved the drive train and required the application of "Loctite 648" to the splines.[5] The dealership was out of the Loctite and Hallam was told it would take several days to obtain it.[6] After verifying with the technician that it could still be driven, Hallam decided he would have the Sprinter repaired elsewhere because he did not want to stay in Spokane.[7] He drove it back to Idaho.

---

[1] Doc. 73 at p. 6.

[2] Doc. 74-2 at pp. 56-64.

[3] Doc. 74-2 at p. 60.

[4] Doc. 74-2 at pp. 65-66.

[5] Doc. 73 at p. 9.

[6] Doc. 74-2 at p. 69.

[7] Doc. 74-2 at p. 69.

Hallam scheduled the repair for February 28, 2017, with the Mercedez-Benz dealership in Farmington, Utah. The technician in Farmington again verified the clunking noise and concluded that it was originating from the rear drive shaft and that Loctite alone would not solve the issue.[8] He told Hallam that he would order a new drive shaft and once the part arrived he could bring the Sprinter back for repair.[9] Hallam left with the Sprinter that same day. When the part arrived, the dealership called Hallam and they scheduled the repair for March 22, 2017.[10] Hallam drove the Sprinter back to Utah for the scheduled repair. The technician again noted the noise and also that he felt "a slight vibration under acceleration."[11] He replaced the drive shaft and noted that the vibration was gone but not the noise.[12] The technician requested to keep the Sprinter for another several days.[13] The repair was finished by March 29, 2017, and the Sprinter operated correctly at that time.[14]

Hallam drove it to Alaska at the end of April without issue. Around June of 2017 he noticed similar issues returning. He contacted MBUSA in August of 2017 and spoke to a representative about having the Sprinter repaired.[15] There was discussion about whether it should be towed to Anchorage or put on a barge to Seattle.[16] During a follow-up call a MBUSA representative suggested that the vehicle might qualify for MBUSA's

---

[8] Doc. 73 at p. 18; doc. 74-2 at p. 81.

[9] Doc. 74-2 at p. 82.

[10] Doc. 74-2 at p. 86.

[11] Doc. 73 at p. 29.

[12] Doc. 73 at p. 29.

[13] Doc. 74-2 at pp. 88-90.

[14] Doc. 74-2 at pp. 89-90.

[15] Doc. 74-2 at pp. 90-91, 98-99.

[16] Doc. 74-2 at p. 98-99; Doc. 73 at p. 77.

repurchase program.[17]  Hallam indicated he was interested in the repurchase option.[18]
Hallam then communicated with Randy Bibber, an executive referral manager with
MBUSA's corporate office ("Bibber").  Bibber referred the repurchase inquiry to an
"aftersales operations manager" who reviewed the Sprinter's service history records and
determined that it did not qualify for a repurchase.[19]  The manager wrote a denial letter
dated August 31, 2017, explaining that the Sprinter's repair history did not meet the
legal requirements for a repurchase offer and noting that MBUSA would continue to
honor the terms of any remaining warranty.[20]

      Hallam did not receive the letter.[21]  However, after contacting MBUSA multiple times, the denial was provided to Hallam via email in mid-October.[22]  Hallam continued to communicate with Bibber and other MBUSA representatives to complain about the denial and voice his displeasure with the explanation provided.  These communications lasted into the winter and spring of 2018.  At one point he inquired about repairs and was told that the corporate office was not equipped to discuss repair issues and that he should contact a dealership for repairs and MBUSA's roadside department for transportation needs.[23]  There was no attempt by Hallam or anyone associated with LTD to contact MBUSA's roadside department or to pursue a fix.  Rather, this lawsuit followed.

---

[17]Doc. 73 at pp. 75-77; Doc. 74-2 at p. 96, 99-100.

[18]Doc. 73 at p. 77.

[19]Doc. 73 at pp. 60-65.

[20]Doc. 73 at p. 32; Doc. 73 at pp. 58-59.

[21]Doc. 74-2 at pp. 104-105.

[22]Doc. 73 at pp. 53-54.

[23]Doc. 73 at pp. 35-43.

Plaintiff's complaint asserts the following causes of action against MBUSA: (1) violation of Alaska Lemon Law; (2) violation of Alaska's Unfair Trade Practices and Consumer Protection Act ("UTPA"); (3) violation of the Magnuson-Moss Warranty Act ("MMWA"); (4) breach of express warranty; (5) breach of implied warranty of merchantability; and (6) revocation of acceptance.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[25] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[26] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[27]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[28] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[29] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for

---

[24] Fed. R. Civ. P. 56(a).

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[26] *Id.*

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[28] *Id.* at 323.

[29] *Id.* at 323-25.

trial.[30] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[31] However, the non-moving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[32]

## IV. DISCUSSION

**Alaska's Lemon Law**

LTD's complaint alleges that MBUSA violated Alaska's Lemon Law, AS 45.45.305, "by refusing to provide the plaintiff with a refund or replacement vehicle despite the fact that the defendant was unable to conform the [v]ehicle to an applicable express warranty after a reasonable number of attempts."[33] Alaska's Lemon Law statute provides as follows:

> If during the term of the express warranty or within one year from the date of delivery of the motor vehicle to the original owner, whichever period terminates first, the manufacturer, distributor, dealer, or repairing agent is unable to conform the motor vehicle to an applicable express warranty after a reasonable number of attempts, the manufacturer or distributor shall accept the return of the nonconforming motor vehicle, and, at the owner's option, shall replace the nonconforming vehicle with a new, comparable vehicle or shall refund the full purchase price to the owner less a reasonable allowance for the use of the motor vehicle from the time it was delivered to the original owner.[34]

The law contains a "presumption that a reasonable number of [repair] attempts have been made" if the plaintiff can establish that "(1) the same nonconformity has been subject to repair three or more times . . . but the nonconformity continues to exist; or

---

[30]*Anderson,* 477 U.S. at 248-49.

[31]*Id.* at 255.

[32]*Id.* at 248-49.

[33]Doc. 1-1 at ¶ 15

[34]AS 45.45.305.

-6-

(2) the vehicle is out of service for repair for a total of 30 or more business days [not to include] any period of time that repairs are not performed for reasons that are beyond control of the manufacturer, distributor, dealer, or repairing agent."[35]

The service record of LTD's Sprinter shows that there was a non-conformity with the Sprinter's drive train during the warranty period. It made a noise when it was put into drive or reverse and it vibrated upon acceleration. In order to qualify for replacement under the law, however, LTD must show MBUSA was unable to remedy the nonconformity after a reasonable number of attempts. LTD is only entitled to a presumption that MBUSA made a reasonable number of attempts to repair the nonconformity if the nonconformity was subject to repair at least three times or was out of service for repairs a total of 30 or more days. LTD asserts that the Sprinter was in fact subject to four repairs: (1) on February 7, 2017, in Spokane; (2) on February 28, 2017, in Farmington; (3) on March 23, 2017, in Farmington; and (4) between March 24 - March 29, 2017, during the time it was at the Farmington dealership.

The record does not support LTD's position that MBUSA attempted to repair the Sprinter's nonconformity three or more times. The visit to Spokane did not result in an attempted fix of the nonconformity by the Mercedes-Benz dealership. The dealership diagnosed a problem with the drive train but needed to order the Loctite for the repair, which would have required Hallam to wait in Spokane a few days. Hallam did not want to stay in Spokane, and because the vehicle was operational, he opted to fix it elsewhere at a later date. Therefore, no repair was attempted. LTD asserts that mere presentation to an authorized dealership for repairs counts as an attempt. However, the California cases it relies upon are inapposite. In those cases the defendant was provided the opportunity to repair the problem but the defendant chose not to take advantage of the opportunity or, despite the opportunity, were unable to isolate and

---

[35]AS 45.45.320.

make the effort to repair the problem.[36] The cases do not address a situation where the owner opted to do repairs elsewhere rather than wait for a part. Indeed, a diagnosis alone does not constitute an attempt under the plain language of Alaska's Lemon Law.[37]

  LTD makes much of the assertion that it was MBUSA's fault he decided to leave Spokane without repairs because the technician told him the Loctite had to be ordered and that the vehicle was safe to drive. It argues that Loctite was presumably available in any type of repair facility and therefore the Sprinter should have been fixed that day. Why Hallam opted to forego the repairs at that time and whether the delay was truly necessary is of no relevance here. Such issues do not change the fact that there was no opportunity given to Mercedez-Benz to fix the Sprinter in Spokane; Mercedez-Benz did not turn Hallam away or fail to fix it. Not surprisingly, there is no law cited for the proposition that having to wait a few days for a part constitutes a failed attempt at repair.

  LTD also argues that the Spokane technician's diagnosis turned out to be incorrect based on the more complicated fix ultimately undertaken in Farmington. Again, that fact is of no relevance. This case does not present a situation where the technician could not figure out what was wrong over an extended amount of time or unreasonably failed to even attempt a repair. The technician concluded that the problem could be solved by applying the necessary Loctite, which in fact was not entirely wrong, but there was no opportunity provided for that technician to make that repair and see if it would resolve the noise.

  Hallam's visits to the Farmington dealership to repair the Sprinter do not count as three separate attempts to fix the drive train nonconformity. When Hallam first visited

---

[36]*See Oregel v. Am. Isuzu Motors, Inc.*, 109 Cal. Rptr. 2d. 583, 90 Cal. App. 4th 1094, 1103-1104 (Cal. Ct. App. 2001).

[37]*Compare* AS 45.45.320 (a reasonable number of attempts to conform the vehicle has been made if "the same nonconformity has been subject to repair three or more times") *with* Wash. Rev. Code § 19.118.041(d)(2) (a reasonable number of attempts to conform the vehicle has been made if "the same serious safety defect has been subject to diagnosis or repair two or more times").

the Farmington dealership at the end of February, the technician heard the clunking noise. He concluded that a new drive shaft needed to be installed. The dealership in Farmington needed to order the required part and no actual repairs were undertaken at that visit. When the part arrived, Hallam scheduled a time to return with the Sprinter. It was operable during this time and indeed was driven extensively.[38] The follow-up appointment was an extension of the February visit. It was the first time MBUSA would attempt a fix. There is no case law to support LTD's position that when a part is needed to repair a nonconformity and a follow-up appointment is scheduled, the defendant has attempted two fixes. Applying such logic "would lead to strained and absurd circumstances where manufacturers would be motivated to have dealers retain possession of vehicles until parts arrive and repairs can be performed solely for the purpose of preventing a single repair from being converted into two."[39]

       The fact that the repair took multiple days longer than expected does not count against MBUSA. Nothing in the law requires that each attempted fix take only one day. Indeed, the law only applies a presumption that the defendant has had a reasonable opportunity to fix a non-conformity after thirty days of inoperability.[40]

       Plaintiff argues that the March visit constituted multiple repair attempts because the dealership performed multiple procedures to fix the problem, but such a position is also untenable. As stated by MBUSA, "[u]nder this logic a [p]laintiff could satisfy the presumption under the Lemon Law in a single, one-day visit so long as the dealer attempts three separate procedures to correct the same nonconformity. That is clearly

---

[38] Between the February 28 visit and the March 22 visit, the odometer increased about 3,000 miles. Doc. 73 at pp. 18, 29.

[39] Doc. 82 at p. 7

[40] AS 45.45.320.

-9-

not consistent with the spirit of the Lemon Law and fails to recognize the reality and complexity of automobile repair."[41]

Plaintiff argues that even if the law does not allow for a presumption under the circumstances, whether MBUSA has had a reasonable number of attempts at repair is an issue reserved for the jury. It cites to an Alaska case, *Berggren v. Metropolotan Life Ins. Co.*,[42] where the issue of reasonableness involved a life insurance policy and the insured's state of mind at the time of his death. It did not have any bearing on the Lemon Law issue of reasonable number of repair attempts. Even assuming such an issue is typically one for the jury, the undisputed facts simply do not provide enough evidence from which a jury could find in LTD's favor. There was only one attempted repair of the non-conforming drive train and another fix of an unrelated oil leak. There is no evidence suggesting unreasonableness on the part of MBUSA as to its repair or that the Sprinter suffered from multiple related defects that went unrepaired.

LTD points to two notations in MBUSA's "C1C report," which MBUSA uses to track communications with customers, in order to support his position that summary judgment is not warranted. One is a comment entered by Bibber to another MBUSA representative where he stated that he wanted to "shut this guy down."[43] The comment, however, was not related to a request for repairs. It was in relation to MBUSA's refusal to repurchase the Sprinter after conducting an internal review and determining it had not yet been the subject of multiple repair attempts. The comment was made about six months after MBUSA declined to move forward with the repurchase and after months of Hallam objecting to the decision. Even taking all inferences in favor of LTD, the evidence does not support a finding that MBUSA refused to repair the Sprinter. The other notation cited by LTD is a reference in the report to the Sprinter's drive shaft

---

[41]Doc. 82 at p. 7; *see Jewell v. Chrysler Corp.*, 994 P.2d 330, 334 (Wyo. 1999).

[42]77 F.D.R. 496 (D. Alaska 1978).

[43]Doc. 73 at p. 46.

-10-

having undergone repair four times.[44] However, it is clear from the record that this is a notation of what Hallam reported on the customer service call.[45]

**UTPA Claim**

Alaska's UTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."[46] Plaintiff concedes that his UTPA claim is based on an alleged violation of the Lemon Law.[47] As discussed above, LTD is unable to satisfy the elements of a Lemon Law claim. Therefore, its UTPA claim must fail as well.

**Breach of Warranty Claims**

MBUSA provided an express warranty for the Sprinter. There is no evidence, however, from which a jury could find that MBUSA failed to comply with its duties to perform repairs under that warranty. As noted above, MBUSA was not provided an opportunity to repair the Sprinter in Spokane. When LTD presented the Sprinter in Farmington for repair, MBUSA conducted the necessary repair. When, a few months later, Plaintiff began to experience the same trouble with the Sprinter, he called MBUSA customer service and reported that the Sprinter had been repaired over four times. That started the process of determining whether it was eligible for repurchase. When MBUSA determined that the vehicle was not in fact eligible based on the repair history, it informed LTD that it would nonetheless honor all applicable warranties. After various communications with Hallam, MBUSA informed Hallam that the corporate office could not arrange repairs and directed LTD to contact a dealership and the roadside assistance department to initiate the repairs, which LTD did not do. The evidence viewed in the light most favorable to LTD simply does not support a finding of a breach

---

[44]Doc. 73 at p. 75.

[45]Doc. 73 at p. 77.

[46]AS 45.50.471(a).

[47]Doc. 79 at p. 17.

-11-

of the Sprinter's express warranty. The evidence also fails to establish a breach of the implied warranty of merchantability. Indeed, Plaintiff does not present an argument suggesting otherwise.

Without evidence to support a breach of express or implied warranty claim against MBUSA, LTD has no claim under the MMWA.[48]

**Revocation of acceptance**

MBUSA also argues that LTD's revocation of acceptance claim under AS 45.02.608 must be dismissed. It argues that the statute applies to a buyer and seller in a sales transaction and that a manufacturer is not a part of the sales transaction or contract of sales. The court finds MBUSA's analysis persuasive and concludes that there is no basis for LTD's revocation claim. Indeed, LTD provides no response to MBUSA's position.

### V. CONCLUSION

Based on the preceding discussion, MBUSA's motion for summary judgment is GRANTED.

DATED this 19th day of August 2020.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[48]*See* 15 U.S.C. § 2304(a)(1) (requiring plaintiff to show a "defect, malfunction, or failure to conform to the warranty" and that the warrantor failed to remedy the alleged defect in a "reasonable number of attempts"); *see also Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (noting that the MMWA permits "consumers to enforce written and implied warranties in federal court, borrowing state law causes of action").